934 F.2d 35
 119 Lab.Cas. P 10,767, 19 Fed.R.Serv.3d 878,
13 Employee Benefits Ca 2233
 SHEET METAL WORKERS LOCAL 19 and Sheet Metal Workers
Welfare, Pension, Vacation, Apprentice, Annuity &
Industry Funds of Local Union No. 19, Appellees,
v.
KEYSTONE HEATING AND AIR CONDITIONING, Appellant.
 No. 90-1484.
 United States Court of Appeals,
Third Circuit.
 Argued Nov. 29, 1990.
Decided May 30, 1991.
 
 Margaret M. Browning (argued), Dennis P. Walsh, Spear, Wilderman, Borish, Endy, Browning and Spear, Philadelphia, Pa., for appellees.
 George P. Wood, Thomas C. Branca (argued), Stewart, Wood & Branca, Norristown, Pa., for appellant.
 Before BECKER, NYGAARD and ALITO, Circuit Judges.
 OPINION OF THE COURT
 ALITO, Circuit Judge:
 
 
 1
 Keystone Heating & Air Conditioning ("Keystone") appeals from a final judgment in favor of the Sheet Metal Workers Local 19 ("the Union") and the Sheet Metal Workers Welfare, Pension, Vacation, Apprentice, Annuity and Industry Funds of Local 19 ("the Funds") for, among other things, "work assessment fees" (union dues) and fund contributions that Keystone was found to owe under a collective bargaining agreement. Although we conclude that many of Keystone's arguments lack merit, we hold that the district court erred in denying Keystone's request for a jury trial on the Funds' claims for delinquent contributions under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. Sec. 1001 et seq. We therefore reverse in part and affirm in part.
 
 I.
 
 2
 The Funds and the Union filed a complaint against Keystone in the United States District Court for the Eastern District of Pennsylvania, invoking federal jurisdiction under Section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. Sec. 185; Sections 502 and 515 of ERISA, 29 U.S.C. Secs. 1132 and 1145; and 28 U.S.C. Sec. 1337. The complaint alleged that Keystone and the Union were parties to a collective bargaining agreement that required the company to make contributions to employee benefit funds and to submit to periodic audits to verify the payroll figures upon which those contributions were based. The complaint also asserted that the company had refused to permit an audit. The complaint sought (1) "[a]n accounting of all amounts due to the various benefit funds, based upon examination of [Keystone's] payroll records," (2) counsel fees, interest, and costs, (3) "[i]njunctive relief ordering [Keystone] to remit employer reports and contributions in a timely fashion," (4) "[s]tatutory penalties as provided by Section of ERISA," 29 U.S.C. Sec. 1132, and (4) "[o]ther relief as the Court deems just and proper."
 
 
 3
 Keystone answered and demanded a jury trial. The Union and the Funds subsequently moved to strike Keystone's jury trial demand. Asserting that they were basing their claims for an accounting, counsel fees, interest, costs, and statutory penalties solely on Section 502 of ERISA, 29 U.S.C. Sec. 1132, and not Section 301 of the LMRA, the Fund and the Union contended that Keystone was not entitled to a jury trial on these claims because Section 502 authorizes only equitable relief. By contrast, the Union and the Funds did not challenge Keystone's demand for a jury trial on the claims for dues and the cost of an audit under Section 301 of the LMRA, 29 U.S.C. Sec. 185.
 
 
 4
 Shortly before trial began, an audit based on records supplied to the plaintiffs in discovery was completed. A few days later, the Union and the Funds moved for leave to file a motion for partial summary judgment less than ten days before the scheduled pretrial hearing (see Fed.R.Civ.P. 56(c)), contending that Keystone's failure to provide timely discovery had precluded an earlier motion. Relying on the deposition of Keystone's chief executive officer, David A. Peppelman, the text of the collective bargaining agreement, and other related documents, the Funds and the Union contended that there were no genuine issues of fact regarding the existence of a collective bargaining agreement or Keystone's obligations under the agreement.
 
 
 5
 On the day the trial began, the district court addressed the issues presented by the plaintiffs' submissions. The court ruled that Keystone was entitled to a jury trial only on the plaintiffs' claims under Section 301 of the LMRA, 29 U.S.C. Sec. 185, for dues and the cost of the audit. The court also ruled as a matter of law that Keystone was a party to and was bound by the collective bargaining agreement. In addition, the court ruled as a matter of law that Keystone's failure to make contributions constituted a breach of contract and that the only remaining factual issues were (1) whether the employees for whom the plaintiffs were seeking contributions had performed work covered by the collective bargaining agreement and (2) whether the plaintiffs were entitled to the cost of the audit.
 
 
 6
 The court impanelled a jury but structured the trial so that the jury considered the disputed factual issues only with respect to the plaintiffs' LMRA claims for dues and the cost of the audit. At the conclusion of the evidence, the court instructed the jury to answer the following three special interrogatories: (1) whether the plaintiffs had proven that Keystone employed persons (other than three employees for whom contributions had been made)[1] who performed work covered by the collective bargaining agreement; (2) whether the plaintiffs had proven that the audit of Keystone's payroll records accurately reflected the number of covered employees and the hours they had worked; and (3) whether the plaintiffs had proven that this audit was reasonably necessary. The jury answered "yes" to all three interrogatories, and the court then ruled that the Union was entitled to $56,382.38 in dues and that the Funds were entitled to $747 for the cost of the audit.
 
 
 7
 Acting as finder of fact with regard to the ERISA claims, the court found that the Funds had proven that they were entitled to a total of $1,350,121.93 for delinquent contributions, interest, and 20% liquidated damages. The court subsequently awarded plaintiffs attorneys' fees. Keystone appealed.
 
 II.
 
 8
 Keystone contends--and we agree--that it was entitled to a jury trial on plaintiffs' claims for fund contributions, interest, and statutory penalties. In analyzing this issue, we will address two subsidiary questions. First, upon which provision or provisions of ERISA did the plaintiffs rely in seeking this relief? Second, is there a right to a jury trial under the provision or provisions in question?
 
 A.
 
 9
 On appeal, plaintiffs appear to argue that they sought the unpaid fund contributions and related relief solely under Section 502(a)(3) of ERISA, 29 U.S.C. Sec. 1132(a)(3). Br. for Appellees at 31. They then correctly note that there is no right to a jury trial on claims based on that provision. See Cox v. Keystone Carbon Co., 861 F.2d 390, 393 (3d Cir.1988), after remand, 894 F.2d 647, 649-50 (3d Cir.1990); Turner v. CF & I Steel Co., 770 F.2d 43, 46 (3d Cir.1985), cert. denied, 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986).
 
 
 10
 The district court record reveals, however, that the plaintiffs repeatedly invoked and obtained relief under Section 502(g)(2) of ERISA, 29 U.S.C. Sec. 1132(g)(2).[2] In their pretrial memorandum, the plaintiffs' request for relief included the following (emphasis added):
 
 
 11
 b. Liquidated damages in an amount equal to 20 percent of the unpaid contributions, as authorized by the Trust Agreements and by Section 502 of ERISA, 29 U.S.C. Section 1132(g)(2)(C);
 
 
 12
 c. Counsel fees and costs of this action, including costs of the audit of defendant's payroll records, pursuant to provisions of the collective bargaining and trust agreements between defendant and plaintiff, and pursuant to Section 502 of ERISA, 29 U.S.C. Section 1132(g)(2)(D);
 
 
 13
 Similarly, in their attorneys' fees petition, the plaintiffs asserted (emphasis added):
 
 
 14
 1. Plaintiffs in this action brought suit pursuant to Sec. 502 of the Employee Retirement Income Security Act, 29 U.S.C. Sec. 1132, to enforce an employer's obligation to make contributions to employee benefit plans pursuant to Sec. 515 of ERISA, 29 U.S.C. Sec. 1145, and judgment was entered in favor of the plaintiffs for unpaid contributions, interest on the unpaid contributions, and liquidated damages pursuant to Sec. 502(g)(2) of ERISA.
 
 
 15
 2. Pursuant to the aforementioned section of ERISA, 29 U.S.C. Sec. 113(g)(2)(D), this court is required to award the plaintiffs "reasonable attorney's fees and costs of the action, to be paid by the defendant."
 
 
 16
 As authorized by Section 502(g)(2), 29 U.S.C. Sec. 1132(g)(2), the district court awarded liquidated damages of 20%, interest, and attorneys' fees. Thus, it is perfectly clear that plaintiffs expressly and successfully relied upon Section 502(g)(2) in the trial court.
 
 
 17
 Moreover, Section 502(g)(2) applies by its terms to any ERISA action in which a fiduciary seeks delinquent fund contributions. Section 515 of ERISA, 29 U.S.C. Sec. 1145, provides that employers must comply with their obligations to make fund contributions required by collective bargaining agreements or multiemployer plans. Section 502(g)(2), which specifies the relief available for a violation of Section 515, states in pertinent part (emphasis added):
 
 
 18
 In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan [the unpaid contributions and other specified relief].
 
 
 19
 Accordingly, Section 502(g)(2) expressly applies to any action in which a fiduciary seeks delinquent contributions under ERISA.
 
 B.
 
 20
 We hold that there is a right to a jury trial for claims implicating Section 502(g)(2), 29 U.S.C. Sec. 1132(g)(2). Because we conclude that Congress intended to confer such a right, we need not address the question whether the right is guaranteed by the Seventh Amendment. See Tull v. United States, 481 U.S. 412, 417 n. 3, 107 S.Ct. 1831, 1835 n. 3, 95 L.Ed.2d 365 (1987); Lorillard v. Pons, 434 U.S. 575, 577, 98 S.Ct. 866, 868, 55 L.Ed.2d 40 (1978).
 
 
 21
 Section 502(g)(2)(E), 29 U.S.C. Sec. 1132(g)(2)(E), authorizes, among other things, "such other legal or equitable relief as the court deems appropriate" (emphasis added). This choice of terminology reveals that Congress intended to grant the right to a jury trial. In Lorillard v. Pons, supra, in which the Supreme Court held that Congress intended to provide for a right to a jury trial in private civil actions for lost wages under the Age Discrimination in Employment Act, 29 U.S.C. Sec. 621 et seq., the Court noted (434 U.S. at 583, 98 S.Ct. at 871) that Section 7(b) and (c) of that Act, 29 U.S.C. Sec. 626(b) and (c), authorize both "legal" and "equitable" relief. The Court then observed (434 U.S. at 583, 98 S.Ct. at 871): "The word 'legal' is a term of art" connoting a right to a jury trial. The court continued (434 U.S. at 583, 98 S.Ct. at 871): "We can infer ... that by providing specifically for 'legal' relief, Congress knew the significance of the term 'legal,' and intended that there would be a jury trial on demand."
 
 
 22
 In our prior cases concerning the right to a jury trial in ERISA suits, we have relied heavily upon analogous terminology employed by Congress in the particular provision at issue. In Cox v. Keystone Carbon Co., 861 F.2d 390, 393 (3d Cir.1988), in which we held that there is no right to a jury trial under Section 502(a)(3) of ERISA, 29 U.S.C. Sec. 1132(a)(3), we reasoned as follows (861 F.2d at 393):Subsection (a)(3) provides that a civil action may be brought "to enjoin any act or practice ... or to obtain other equitable relief." 29 U.S.C. Sec. 1132(a)(3) (emphasis added). In using the words "equitable relief", we can infer that Congress knew the significance of the term equitable and intended that no jury be available on demand.
 
 
 23
 See also Pane v. R.C.A. Corp., 868 F.2d 631, 636 (1989). Just as the wording of Section 502(a)(3) evinces a congressional intent not to confer a right to a jury trial, the different terminology employed in Section 502(g)(2) evinces a congressional intent to confer such a right. Cf. Bugher v. Feightner, 722 F.2d 1356 (7th Cir.1983), cert. denied, 469 U.S. 822, 105 S.Ct. 98, 83 L.Ed.2d 43 (1984) (right to jury trial on claim for delinquent contributions under Section 301 of the LMRA). Thus we hold that the district court erred in partially striking Keystone's jury demand.[3]
 
 III.
 
 24
 Keystone contends that the trial court committed numerous errors in pretrial and trial rulings. We have reviewed the alleged errors that relate to the portion of the judgment based on the LMRA,[4] and we find that Keystone's arguments lack merit.
 
 A.
 
 25
 Keystone argues that the plaintiffs could not recover delinquent contributions because the complaint sought only an audit of the company's payroll records. We disagree.
 
 
 26
 Rule 8(a)(3) of the Federal Rules of Civil Procedure does not require that the demand for judgment be pled with great specificity. See 5 C. Wright & A. Miller, Federal Practice and Procedure Sec. 1255 (1990). In the present case, the district court soundly exercised its discretion[5] in concluding that the complaint was broad enough to permit the plaintiffs to recover delinquent contributions. The complaint sought, not merely an audit, but "[a]n accounting of all amounts due to the various benefit funds," and it is well established that a court-ordered accounting means "a rendition of a judgment for the balance ascertained to be due." Black's Law Dictionary 18 (5th ed. 1979). See also 1 Am.Jr.2d Accounts and Accounting Sec. 44 at 418 (1962); 1A C.J.S. Accounting Sec. 11 (1985). Moreover, paragraph one of the complaint asserted that the plaintiffs were "due and owing the sum sought from the Defendant as set forth below." The complaint also requested interest, thus clearly implying that a past due principal was sought, as well as other "just and proper" relief. Thus, the complaint should have alerted Keystone that the plaintiffs were seeking an award of past due contributions.
 
 B.
 
 27
 Keystone contends that the district court committed reversible error by ruling before trial as a matter of law that the company was a party to the collective bargaining agreement. We reject this argument.
 
 
 28
 Federal substantive law governs the meaning of collective bargaining agreements. Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 456, 77 S.Ct. 912, 917, 1 L.Ed.2d 972 (1957). Although a collective bargaining agreement differs from an ordinary contract (Griesmann v. Chemical Leaman Tank Lines, Inc., 776 F.2d 66, 72 (3d Cir.1985)), the meaning of a collective bargaining agreement may be determined by applying general rules of contract law as long as federal labor law does not provide a conflicting rule. See Textile Workers v. Lincoln Mills, 353 U.S. at 457, 77 S.Ct. at 918; United Paperworkers International Union v. Champion Int'l Corp., 908 F.2d 1252, 1256 (5th Cir.1990); International Union, UAW v. Yard-Man, 716 F.2d 1476, 1479 (6th Cir.1983), cert. denied, 465 U.S. 1007, 104 S.Ct. 1002, 79 L.Ed.2d 234 (1984).
 
 
 29
 Under general rules of contract law, which may appropriately be applied in the present case, the question whether Keystone entered into the collective bargaining agreement is a question of contract interpretation. See, e.g., Restatement (Second) of Contracts Sec. 200 comment a (1981); 3 A., Corbin Contracts Sec. 534 at 10 (1960); S. Williston, A Treatise on the Law of Contracts Sec. 600A at 288-89 (1961 Jaeger ed.). Interpretation of a written contract is a function for the court when the terms and surrounding circumstances are unambiguous. Griesmann v. Chemical Leaman Tank Lines, Inc., 776 F.2d at 72 & n. 9; Mellon Bank, N.A. v. Aetna Business Credit, 619 F.2d 1001, 1011 (3d Cir.1980); Restatement (Second) of Contracts Sec. 213 (1981); 3 A Corbin, supra Sec. 542; S. Williston, supra Sec. 616. We have held that questions of contract interpretation should generally be reviewed for clear error. Cooper Laboratories v. International Surplus Lines, 802 F.2d 667, 671 (3d Cir.1986); Ram Construction Co., Inc. v. American States Insurance Co., 749 F.2d 1049, 1052 (3d Cir.1984).
 
 
 30
 In the present case, there was no ambiguity regarding Keystone's status as a party to the collective bargaining agreement. The cover of the collective bargaining agreement states that it is "between Sheet Metal Workers' International Association Local Union No. 19 ... and Keystone Heating & A.C." The agreement is signed on the line for the "Employer" by "James W. Fischer." Keystone's chief executive officer, David A. Peppelman, stated in his deposition that the agreement was signed by Keystone's president, James W. Fischer, and that Fischer was authorized to sign contracts for the company.
 
 
 31
 Keystone does not deny these facts but contends principally that Keystone's failure to comply with the agreement over a period of years shows that Keystone was not a party to the agreement. This evidence of sustained breach, however, is not alone sufficient to create ambiguity regarding Keystone's status as a party to the collective bargaining agreement.[6]
 
 IV.
 
 32
 We will affirm the portion of the district court judgment requiring Keystone to pay delinquent dues and the cost of the audit. We will reverse the remainder of the judgment and remand for further proceedings.
 
 
 
 [1]
 Keystone made contributions for three individuals who became union members before forming the company: James W. Fischer, Keystone's president; David A. Peppelman, the chief executive officer; and William Fulton
 
 
 [2]
 Section 502(g)(2) of ERISA, 29 U.S.C. Sec. 1132(g)(2) provides:
 (g) Attorney's fees and costs; awards in actions involving delinquent contributions
 (2) In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded the court shall award the plan--
 (A) the unpaid contributions,
 (B) interest on the unpaid contributions,
 (C) an amount equal to the greater of--
 (i) interest on the unpaid contributions, or
 (ii) liquidated damages provided for under the plan in an amount not in excess 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A).
 (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
 (E) such other legal or equitable relief as the court deems appropriate.
 For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.
 
 
 [3]
 The error was not harmless under Fed.R.Civ.P. 61. Error in striking a jury trial demand is harmless if a directed verdict would have been warranted. Laskaris v. Thornburgh, 733 F.2d 260, 264 (3d Cir.), cert. denied, 469 U.S. 886, 105 S.Ct. 260, 83 L.Ed.2d 196 (1984); Amoco Oil Co. v. Torcomian, 722 F.2d 1099, 1105 (3d Cir.1983). In this case, the plaintiffs do not maintain that a directed verdict should have been entered on their ERISA claims
 
 
 [4]
 Because they relate solely to the ERISA claims, we have not considered Keystone's arguments concerning the residential rate, the so-called "most favored nation" clause, and the vacation fund
 
 
 [5]
 See, e.g., Morgan v. Weinberger, 848 F.2d 909, 911 (8th Cir.1988), cert. denied, 488 U.S. 1013, 109 S.Ct. 802, 102 L.Ed.2d 793 (1989)
 
 
 [6]
 Keystone also contends that the district court erred in admitting certain items of evidence and making certain statements in the jury's presence. We find that these arguments lack merit