**In re Joseph F. CARRETTA, Debtor.**

**CIV.A. No. 97–4727 AJL.**

United States District Court,
D. New Jersey.

Feb. 6, 1998.

George R. Hirsch, Bressler, Amery & Ross, P.C., Morristown, NJ, for Appellant.

Paul S. Hollander, Okin, Hollander & De-Luca, L.L.P., Fort Lee, NJ, for Appellee.

## OPINION

LECHNER, District Judge.

This is an appeal by Allstate Financial Corporation ("AFC") of a final order entered on 25 July 1997 (the "25 July 1997 Order") of the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court").[1]  AFC appeals the 25 July 1997

---

**1.**  In support of the appeal, AFC submitted: Brief on Appeal of Appellant Allstate Financial Corporation (the "Moving Brief"); Reply Brief on Appeal of Appellant Allstate Financial Corporation (the "Reply").

In opposition to the appeal, Carretta submitted: Brief on Behalf of Debtor/Appellee, Joseph Carretta.

In addition, the transcript from the 24 June 1997 hearing (the "24 June 1997 Hearing") was

reviewed.  The transcript from the 24 June 1997 Hearing is incorrectly dated 24 June 1996.

Also included in the record on appeal were various documents filed with the Bankruptcy Court including:  Notice of Motion by Allstate Financial Corporation for Entry of an Order Enforcing Absolute Assignment of Rents and Leases and for Other Relief, filed 3 June 1997; Declaration of Kimeth Gardner, filed 4 June 1997 (the "Gardner Decl.") attaching Exhibits A through E;  Declaration of Michael J. Connolly, filed 19

Order of the Bankruptcy Court which denied AFC's Motion for "Order Enforcing Absolute Assignment of Rents and Leases and for Other Relief" (the "Motion to Enforce Assignment of Rents").[2] Appellate jurisdiction exists pursuant to 28 U.S.C. § 158(a). For the reasons set forth below, the 25 July 1997 Order of the Bankruptcy Court is reversed.

*Facts*

A. *Background*

Carretta is the owner of property located at South 160 Route 17, Paramus, New Jersey (the "Paramus Property"). *See* Carretta Aff., ¶ 1. The Paramus Property consists of 6.7 acres of land and is improved with a 21,920 square foot major repair shop and 19,554 square feet of office space. *See id.* at ¶ 2. Prior to December of 1994, the Paramus Property had been the corporate headquarters of Carretta Trucking, Inc. *See id.* At various times in the past, the Paramus Property has also been occupied by Load to Ride, Inc. ("LTRI"), Carretta LTR, Inc. ("CLI") and Carretta Transportation Logistics, Inc. ("CTLI") (collectively the "Operating Companies"). *See id.* The Operating Companies are wholly owned subsidiaries of National Transportation Services, Inc. ("NTSI"). *See id.* Carretta owns seventy percent of the equity interest in NTSI. *See id.*

On or about 27 August 1996, AFC provided funding to LTRI, CLI, CTLI and NTSI (collectively the "Corporations"). *See* Gardner Decl., ¶ 2.

On 25 July 1996, in connection with the funding which AFC provided to the Corporations, Carretta provided to AFC an individual guaranty agreement (the "Guaranty"), which guaranteed the payment of any indebtedness of the Corporations to AFC. *See* Gardner Decl., ¶ 3; Guaranty attached as Exh. A to Gardner Decl. The Guaranty and related indebtedness were secured, *inter alia*, by an "Open–End Mortgage, Absolute Assignment of Leases and Rents and Security Agreement"[3] in third priority with regard to the Paramus Property (the "First AFC Mortgage") and a second "Open-end Mortgage, Absolute Assignment of Lease and Rents and Security Agreement" in seventh priority with regard to the Paramus Proper-

---

June 1997; Affidavit of Joseph Carretta, filed 19 June 1997 (the "Carretta Aff.") attaching Exhibits A through L and Exhibit A; Notice of Appeal, filed 24 July 1997; Proof of Claim filed on behalf of Allstate Financial Corporation on 24 June 1997; Memorandum of Law in support of Allstate Financial Corporation's Motion for an Order Enforcing Absolute Assignment of Rents and for Other Relief, dated 3 June 1997 (the "AFC Bankruptcy Court Brief"); Brief on Behalf of the Debtor in Opposition to Motion of Allstate Financial Corporation for Entry of an Order Enforcing Absolute Assignment of Rents and for Other Relief, dated 19 June 1997 (the "Carretta Bankruptcy Court Brief").

The Carretta Aff. contains argument. Accordingly, only the statements in the Carretta Aff. which are based upon the personal knowledge of Carretta and contain no factual or legal argument will be relied upon in the instant matter. *See* Local Civil Rule 7.2(a).

2. During the 24 June 1997 Hearing, the Bankruptcy Judge ruled from the bench and denied the Motion to Enforce Assignment of Rents. The transcript from the 24 June 1997 Hearing is fifty-nine pages; in nine of these pages the Bankruptcy Judge addresses the Motion to Enforce Assignment of Rents. *See* 24 June 1997 Hearing at 38–48. Of these nine pages, four specifically concern the findings of the Bankruptcy Court. *See id.* at 44–47. At no time during the 24 June 1997 Hearing did the Bankruptcy Judge analyze the

actual language of the "Open–End Mortgage, Absolute Assignment of Leases and Rents and Security Agreement" (the "Mortgage Document") at issue in the instant appeal except to indicate she was not relying on the language "in [and] of itself" contained in paragraph 32(c) ("Paragraph 32(c)") of the Mortgage Document in making her determination. *See id.* at 46.

On 24 July 1997, AFC filed a notice of appeal (the "Notice of Appeal") of the decision of the Bankruptcy Judge issued during the 24 June 1997 Hearing. The Notice of Appeal stated "[a]n order memorializing the Bankruptcy Court's decision has not yet been entered. Pursuant to Federal Rule of Bankruptcy Procedure 8002(a) this Notice of Appeal shall be treated as filed after entry of the order and on the day thereof." Notice of Appeal at 1. Thereafter, the 25 July 1997 Order was filed. The 25 July 1997 Order simply states: "[AFC]'s motion for an order enforcing its assignment of leases and rents … with regard to the Paramus Property and for other relief is denied." 25 July 1997 Order at ¶ 1. The 25 July 1997 Order provides neither a factual nor a legal basis for the denial of the Motion to Enforce Assignment of Rents; the reasons of the Bankruptcy Court set forth during the 24 June 1997 Hearing are reviewed.

3. As indicated, this document in its entirety will be referred to as the Mortgage Document.

ty (the "Second AFC Mortgage").[4] *See* Gardner Aff., ¶ 4. The AFC Mortgages were executed on 27 August 1996. Also, on 27 August 1996, Carretta provided CoreStates Bank ("CoreStates"), a previous creditor, with a mortgage (the "CoreStates Mortgage") and with an assignment of rents (the "CoreStates Assignment of Rents") on the Paramus Property. *See* Carretta Aff., ¶ 10.

Before obtaining financing from AFC which was secured by the AFC Mortgages on the Paramus Property, Carretta was required to obtain the consent of CoreStates to further encumber the Paramus Property. *See* Opposition Brief at 6. The consent of CoreStates was necessary because in November of 1992 Carretta executed and delivered to CoreStates an instrument entitled "Covenant not to Convey or Encumber by Joseph Carretta in Favor of CoreStates, N.A." (the "Covenant Not to Encumber"). *See* Covenant Not to Encumber attached as Exh. C to Carretta Aff. The Covenant Not to Encumber was amended in August 1993 (the "Amended Covenant Not to Encumber"). *See* Amended Covenant Not to Encumber attached as Exh. D to Carretta Aff. Pursuant to the Amended Covenant Not to Encumber, Carretta could not further encumber the Paramus Property without first obtaining the consent of CoreStates. *See id.*

CoreStates consented to the AFC Mortgages pursuant to the terms and conditions of a subordination and irrevocable consent agreement (the "Intercreditor Agreement"), dated 26 August 1996. *See* Intercreditor Agreement attached as Exh. E to Carretta Aff. CoreStates, AFC and Carretta signed the Intercreditor Agreement. *See id.*

In the Intercreditor Agreement, CoreStates agreed the Amended Covenant Not to Encumber would not apply to the AFC Mortgages. *See* Intercreditor Agreement attached as Exh. E to Carretta Aff., ¶ K. The Intercreditor Agreement also reflected Carretta agreed to grant CoreStates a mortgage on the Paramus Property in the amount of $2,200,500.000, and that CoreStates had agreed to subordinate that mortgage to a mortgage in favor of AFC, up to $1,200,000. *See id.*, ¶¶ J, K, 3, 4.

Each of the AFC Mortgages [5] contained the following provision (the "AFC Assignment of Rents"): [6]

32. ABSOLUTE ASSIGNMENT OF LEASES AND RENTS

(a) As further security for the payment of the [i]ndebtedness and performance of the [o]bligations, the Mortgagor hereby absolutely and unconditionally assigns to the Mortgagee, effective irrespective of any [e]vent of [d]efault hereunder, the rents, income and profits, including use and occupancy payments, and any payments realized from indemnifications running for the benefit of the Mortgagor, from [the Paramus Property] and all leases now or hereafter affecting [the Paramus Property], together with any security deposits by tenants thereunder, if any, provided, however, that, except for proceeds received pursuant to indemnification where there is physical damage to or a lien upon the [Paramus Property] or where title is otherwise affected or burdened, until the occurrence of an [e]vent of [d]efault hereunder, the Mortgagor may collect and apply all rents and other such payments, and the Mortgagee hereby appoints the Mortgagor its attorney-in-fact for such purpose. The Mortgagee shall have the right forthwith after any [e]vent of [d]efault hereunder, with or without notice or demand, with or without the commencement of any action to foreclose this Mortgage and without the appointment of a receiver, to enter upon the [Paramus Property], let the same collect all rents therefrom and apply the rents, after payment of all charges and expenses, on account of the [i]ndebtedness secured hereby, whether they matured or not, and the Mortgagor hereby irrevocably appoints the Mortgagee his attorney-in-fact to institute summary proceedings against any tenant of [the Paramus Prop-

---

4. Collectively, the First and Second AFC Mortgages will be called the AFC Mortgages.

5. The Mortgage Document refers to Carretta as the Mortgagor and AFC as the Mortgagee.

6. This provision will be referred to as either the AFC Assignment of Rents or Paragraph 32(a).

erty] who fails to comply with any lease provisions.

*Id.*

A security agreement is present in the AFC Mortgages as well. Paragraph 21 of the Mortgage Document states:

> This Mortgage creates a security interest in the personal property and fixtures included in the [Paramus Property] and constitutes a security agreement under the New Jersey Uniform Commercial Code. Security interest is granted in all of the following, whether now owned or hereafter acquired:
>
> . . . .
>
> (c) all rents, issues and profits of the [Paramus Property] accruing after an [e]vent of [d]efault as defined in the Mortgage from Mortgagor to Mortgagee covering the [Paraums Property], whether such leases or tenancies are now existing or are hereafter created.

Mortgage Document attached as Exh. J to Carretta Aff., Paragraph 21.

Moreover, paragraph 14 ("Paragraph 14") of the AFC Mortgages, in pertinent part, states:

> MORTGAGEE'S RIGHTS CUMULATIVE; MATTERS OF CONSTRUCTION
> The rights and remedies of Mortgagee hereunder shall be in addition to every other right and remedy now and hereafter provided by law or equity or any other [o]bligation [d]ocument; the rights and remedies of Mortgagee shall be cumulative and not exclusive one of the other; Mortgagee may exercise the same at such times, in such order, to such extent, and as often as Mortgagee deems advisable, and. without regard to whether the exercise of one precedes, concurs with, or succeeds the exercise of another. . . .
>
> If any of the rights, remedies, powers or other provisions contained in this Mortgage . . . are inconsistent with or contrary to one another, all such rights, remedies, powers and other provisions shall at all times be construed so as (a) to maximize the Mortgagee's rights, remedies and powers under all circumstances, (b) to minimize (or eliminate) any and all constraints or limitations . . . on Mortgagee's ability to exercise and enforce such rights, remedies and powers and (c) to minimize (or eliminate) Mortgagor's and the [Corporations'] defenses thereto, subject in all cases to mandatory, non-waivable requirements of applicable law (preceding clauses (i), (ii) and (iii), collectively the "Stated Enforcement Goals"). In any specific instance, those provisions of this Mortgage . . . which do not best achieve the Stated Enforcement Goals shall, in such specific instance, be deemed to be superseded by those provisions which best achieve the Stated Enforcement Goals, but only to the extent necessary in such specific instance to best achieve the Stated Enforcement Goals. Mortgagor acknowledges and agrees that Mortgagee shall be entitled to determine (in its sole and absolute discretion) in all instances which provisions of this Mortgage . . . best achieve the Stated Enforcement Goals.

*Id.*

### B. *Procedural History*

It appears Carretta and the Corporations defaulted under their obligations to AFC beginning in October 1996. *See* Gardner Aff., ¶ 6B. Thereafter, on 16 January 1997, Carretta filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code. As of 18 April 1997, AFC alleges Carretta owes at least $3,346,542.35 under the Guaranty. *See id.,* ¶¶ 6–7.

On 3 June 1997, AFC filed the Motion to Enforce Assignment of Rents in the Bankruptcy Court. AFC sought the following remedies:

(1) A declaration that all rents, income, profits and leases with respect to the Paramus Property are the property of AFC and not Carretta or his estate;

(2) An accounting and other documentation concerning the rents, income and profits from the Paramus Property;

(3) Relief from the automatic stay provisions of the Bankruptcy Code, 11 U.S.C. § 362, to collect and apply in AFC's discretion all rents, income and profits, security deposits and other such revenue from the Paramus Property;

(4) Turnover of all such revenues; and

(5) Other relief to facilitate the following. *See* AFC Bankruptcy Court Brief at 10. Opposition to the Motion to Enforce Assignment of Rents was filed by Carretta and other mortgage lienholders including Terco Transportation and Anthony Gargiulo who have priority over AFC.[7]

The Motion to Enforce Assignment of Rents required the Bankruptcy Court to decide whether the AFC Assignment of Rents was absolute or collateral. *See* 24 June 1997 Hearing at 13–14.

During the 24 June 1997 Hearing, the Bankruptcy Judge held the AFC Assignment of Rents was not absolute. *See* 24 June 1996 Hearing at 47. In deciding the AFC Assignment of Rents was not absolute, the Bankruptcy Judge considered the execution of the CoreStates Mortgage, the CoreStates Assignment of Rents, the Second AFC Mortgage, and the Intercreditor Agreement. *See id.* at 44. The Bankruptcy court noted it was "obligated ... not just to look at the [AFC][A]ssignment [of Rents] in a vacuum, but to look at the actions of [AFC] and the documents and documentation executed at or about the same time or simultaneously with the [AFC] [A]ssignment [of Rents]." *Id.*

The Bankruptcy Judge indicated *In re Jason Realty*, 59 F.3d 423 (3d Cir.1995), governed her decision. *See* 24 June 1997 Hearing at 40–41. *Jason Realty* concerned a single-asset limited partnership which owned and operated a building in New Jersey for retail and office use. *See* 59 F.3d at 425. The *Jason Realty* creditor held a note, a mortgage and an assignment of leases which included an assignment of rents. In that case, the assignment agreement assigned the leases, rents, income and profits from the property to the creditor, but granted the debtor the privilege to collect and keep the rents unless a default occurred. The debtor

defaulted, filed for protection under Chapter 11 shortly thereafter, and argued the assignment was merely a collateral pledge. The creditor argued the assignment was absolute, that title in the leases and rents was vested in the creditor and that the debtor merely held a revocable license to collect the rents. *See id.*

Three documents established the *Jason Realty* debtor-creditor agreement: (1) a note, (2) a mortgage on the property, and (3) an assignment of leases. *See* 59 F.3d at 426. At the outset, the *Jason Realty* court observed that property of an estate consists of all property in which a debtor holds an interest upon the commencement of the case. *See id.* (citing 11 U.S.C. § 541(a)(1),(6)). Observing that assignments of rents are interests in real property, *Jason Realty* concluded state law determines whether the creditor held an absolute assignment or merely a security interest in the leases and rents. *See id.* at 427 (citing *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979); *Commerce Bank v. Mountain View Village, Inc.,* 5 F.3d 34, 37 (3d Cir.1993)). The *Jason Realty* court further observed that " '[i]t is settled in New Jersey that an assignment of rents passes title to the assignee.' " *Id.* (quoting *Paramount Bldg. & Loan Ass'n of Newark v. Sacks,* 107 N.J.Eq. 328, 152 A. 457 (N.J.Ch.1930)).

*Jason Realty* held, under New Jersey law, "[a]n assignment is absolute if its language demonstrates an intent to transfer immediately the assignor's rights and title to the rents" and if the parties "mutually agree[ ] in words of the present to transfer full title to the rents." 59 F.3d at 427 (citations omitted).

In support of its argument in the Bankruptcy Court, AFC relied upon *Jason Realty* and the language of the AFC Assignment of

---

7. The priority of mortgages on the Paramus Property is as follows:

| Mortgage Priority | Mortgage | Principal Amount Secured |
|---|---|---|
| First | Anthony Gargiulo | $ 190,000.00 |
| Second | Terco, Inc. | 84,000.00 |
| Third | AFC | 1,200,000.00 |
| Fourth | CoreStates | 2,200,500.00 |
| Fifth | United Acquisition II Corp. | 425,000.00 |
| Sixth | Lawrence Twill | 275,000.00 |
| Seventh | AFC | 5,000,000.00 |

*See* Carretta Aff., ¶ 8. Carretta disputes the amounts claimed to be due on the third through seventh mortgages. *See* Opposition Brief at 8. This dispute is not relevant to the instant matter.

Rents to establish it was absolute. *See* 24 June 1997 Hearing at 5, 7. AFC also argued the execution of more than one assignment of rents as to the Paramus Property did not mean that the AFC Assignment of Rents was not absolute. *See id.* at 6. Rather, AFC contended, this multiple execution "just mean[t] that after the lender [with priority wa]s paid off . . . the other assignment would kick into play." *Id.* at 6–7. AFC further noted Paragraph 14 of the Mortgage Document requires that any clauses be interpreted in favor of AFC. *See id.* at 6.

Carretta argued *Jason Realty* could be distinguished and accordingly did not apply to the instant matter. *See* 24 June 1997 Hearing at 21. Carretta contended his understanding of Paragraph 32 was that it was a collateral assignment and not an absolute assignment. *See id.* at 17. Carretta also argued the language of the Mortgage Document, specifically Paragraph 32(c),[8] evidences an absolute assignment was not granted. *See id.* at 14. This language required the consent of AFC if Carretta desired to further assign rents from the Paramus Property. *See* Mortgage Document attached as Exh. J to Carretta Aff., Paragraph 32(c). Carretta argued Paragraph 32(c) was not boilerplate language but was purposefully included because on the day the First AFC Mortgage was executed three additional instruments, each of which purported to further assign the rents from the Paramus Property to at least two different parties, were executed as well. *See* 24 June 1997 Hearing at 14–15. Paragraph 32(c), Carretta contended, showed the AFC Assignment of Rents was not absolute and that he retained an interest in the rents which he could "assign" to others. *See* Carretta Bankruptcy Court Brief at 2–9. Carretta further argued this was not inconsistent with the holding of *Jason Realty*, which only provided a limited safe harbor for lenders, and a court could "look at the transaction as a whole" once the lender was outside of the safe harbor provided for in *Jason Realty*. *See id.*

In addition, Carretta argued CoreStates only consented to subordinate the CoreStates Mortgage to the First AFC Mortgage, but not to the AFC Assignment of Rents. *See* 24 June 1997 Hearing at 24. Thus, Carretta contended even if the AFC Assignment of Rents was absolute, the AFC Assignment of Rents is subordinate to the CoreStates Mortgage and the CoreStates Assignment. *See id.* at 14.

The Bankruptcy Court distinguished *Jason Realty* by stating:

> The Court is of the opinion that had the *Jason Realty* court been presented with other Intercreditor Assignments and Intercreditor Agreements and Assignments executed at or about the same time, that the result may have been different.

24 June 1997 Hearing at 45–46. The Bankruptcy Court also noted *Jason Realty* was "based upon the [c]ourt's determination of what the parties' present intention was at the time of the assignment. So the [c]ourt would have to find that there was a present intention on the part of [AFC] and [Carretta] to absolutely assign [AFC] the title to these rents." *Id.* at 46. The Bankruptcy Court held that the intention of the parties to assign the rents at issue was "belied by agreements that were simultaneously entered into by the parties, including [AFC]." *Id.* Accordingly, the Bankruptcy Court held based on a fair reading of all the documents executed at about the same time, the AFC Assignment of Rents was not absolute. *See id.* at 47. The Bankruptcy Court acknowledged that if Carretta had solely based his argument upon Paragraph 32(c) of the Mortgage Document this defense would be inadequate against the argument of AFC that an absolute assignment existed. *See id.* at 43–44.

*Discussion*

**A. Standard for Review of Determination of Bankruptcy Court**

The proper standard of review to be applied by a district court when reviewing a ruling of a bankruptcy court is determined

---

**8.** Paragraph 32(c) of the AFC Mortgages, in relevant part, states:

> The Mortgagor will not, without the prior written consent of the Mortgagee, assign the rents or any part thereof, from said Premises . . . .
> *Id.*

by the nature of the issues presented on appeal.

■ Legal conclusions of a bankruptcy court are subject to *de novo* or plenary review by a district court. *See Donaldson v. Bernstein*, 104 F.3d 547, 551 (3d Cir.1997); *Chemetron Corp. v. Jones*, 72 F.3d 341, 345 (3d Cir.1995), *cert. denied*, 517 U.S. 1137, 116 S.Ct. 1424, 134 L.Ed.2d 548 (1996); *In re Johns*, 37 F.3d 1021, 1023 (3d Cir.1994); *In re Columbia Gas Transmission Corp.*, 37 F.3d 982, 983 (3d Cir.1994), *cert. denied sub nom. West Virginia State Dep't of Tax and Revenue v. I.R.S.*, 514 U.S. 1082, 115 S.Ct. 1793, 131 L.Ed.2d 721 (1995); *In re Modular Structures*, 27 F.3d 72, 76 (3d Cir.1994); *In re DeSeno*, 17 F.3d 642, 643 (3d Cir.1994); *FRG, Inc. v. Manley*, 919 F.2d 850, 854 & n. 8 (3d Cir.1990); *In re Maddox*, 200 B.R. 546, 549 (D.N.J.1996); *In re Brennan*, 198 B.R. 445, 448 (D.N.J.1996); *In re Hammond*, 156 B.R. 943, 945 (E.D.Pa.1993), *aff'd*, 27 F.3d 52 (3d Cir.1994).

■ Factual determinations of a bankruptcy court will be affirmed unless "clearly erroneous." *See* Fed.R.Bankr.P. 8013; *Chemetron Corp.*, 72 F.3d at 345; *In re Indian Palms Associates, Ltd.*, 61 F.3d 197, 203 (3d Cir.1995) (citing *Landon v. Hunt*, 977 F.2d 829, 833 (3d Cir.1992)); *In re Siciliano*, 13 F.3d 748, 750 (3d Cir.1994) (citing *Meridian Bank v. Alten*, 958 F.2d 1226, 1229 (3d Cir. 1992)); *In re Brown*, 951 F.2d 564, 567 (3d Cir.1991). On review, the factual findings of a bankruptcy court must be "give[n] 'due regard' [because of] the opportunity of that court to judge, first-hand, the credibility of the witnesses." *Fellheimer, Eichen & Braverman, P.C. v. Charter Technologies, Inc.*, 57 F.3d 1215, 1223 (3d Cir.1995) (citing Fed. R.Bankr.P. 8013).

"Clearly erroneous" has been interpreted to mean that a reviewing court must accept the factual determinations of the fact finder unless the finding was "completely devoid of minimum evidentiary support displaying some hue of credibility, or ... bears no rational relationship to the supportive evidentiary data." *United States v. Antoon*, 933 F.2d 200, 204 (3rd Cir.), *cert. denied*, 502 U.S. 907, 112 S.Ct. 300, 116 L.Ed.2d 243 (1991) (quotation omitted); *see Charter Technologies, Inc.*, 57 F.3d at 1223 (citation omitted). Even where some supporting evidence exists, a reviewing court will not set aside a factual finding unless the reviewing court has a "definite and firm conviction that a mistake has been made." *Haines v. Liggett Group Inc.*, 975 F.2d 81, 92 (3d Cir.1992); *see United States v. Uwaezhoke*, 995 F.2d 388, 394 (3d Cir.1993), *cert. denied*, 510 U.S. 1091, 114 S.Ct. 920, 127 L.Ed.2d 214 (1994); *In re Tempo Technology Corp.*, 202 B.R. 363, 367 (D.Del.1996).

■ Where a matter presents mixed questions of law and fact, it is appropriate to apply the relevant standard to each component of the issue. *See FGH Realty Credit Corp. v. Newark Airport/Hotel Ltd. Partnership*, 155 B.R. 93, 97 (D.N.J.1993) citing *In re Sharon Steel Corp.*, 871 F.2d 1217, 1222 (3d Cir.1989); *see also Chemetron*, 72 F.3d at 343.

In the instant matter the parties disagree as to the appropriate standard of review. *See* Moving Brief at 3; Opposition Brief at 3. AFC argues the instant matter involves the legal conclusions of the Bankruptcy Court and is accordingly subject to plenary review. *See* Moving Brief at 3 (citing *Jason Realty*, 59 F.3d at 426). AFC further contends the instant issue concerns the appropriateness of the legal standard the Bankruptcy Court implemented in reviewing the AFC Assignment of Rent not the meaning of the language of the AFC Assignment of Rents itself. *See* Reply at 5. Carretta argues the finding of the Bankruptcy Court that the AFC Assignment of Rents was intended as a collateral assignment is a finding of fact and is reviewable under the clearly erroneous standard. *See* Opposition Brief at 3 citing *PaineWebber, Inc. v. Hartmann*, 921 F.2d 507, 510 (3d Cir.1990) (" '[T]he interpretation of contractual language to discern contractual intent is a question of fact ...' which cannot be distributed on appeal unless clearly erroneous").

■ *Jason Realty* governs the instant issue and indicates "[b]ecause there is no dispute as to the facts presented below, the interpretation and application of the assignment contract and the Bankruptcy Code

raise only questions of law subject to plenary review." *Jason Realty*, 59 F.3d at 425–26.

## B. *The Appeal*

AFC asserts Carretta granted it an absolute assignment of rents, and that the Bankruptcy Court erred in concluding the AFC Assignment of Rents was not absolute because of the circumstances under which it was given. *See* Moving Brief at 5. AFC argues it is entitled to the rents from the Paramus Property based upon the "precise wording" of Paragraph 32 which "inescapably and unambiguously expresses an agreement to assign present title in the rents to AFC." *Id.* at 13. AFC further argues *Jason Realty* prohibits a bankruptcy court from looking beyond the actual wording of the assignment as the Bankruptcy Court did here. *See id.*

Carretta contends the Bankruptcy Court properly considered all of the evidence in the record concerning the intent of the parties in holding that the AFC Assignment of Rents was not absolute. *See* Opposition Brief at 13. Carretta argues the contention of AFC that the Bankruptcy Court's analysis must be restricted to the assignment language misreads *Jason Realty. See id.*

Simply stated, the issue to be decided is whether the Bankruptcy Court properly held the AFC Assignment of Rents was not absolute and whether in making this determination extrinsic evidence could be considered. Both parties look to *Jason Realty* for support.

■ Assignments of rents are considered interests in real property and accordingly are created and defined by the law of the situs of the real property. *See Jason Realty*, 59 F.3d at 427; *In re Bridgepoint Nurseries, Inc.*, 190 B.R. 215, 219 (Bankr. D.N.J.1996). A Federal bankruptcy court is not permitted to "upend the property law of the state in which it sits, for to do so would encourage forum shopping and allow a party to receive 'a windfall merely by reason of the happenstance of bankruptcy.'" *Id.* (quoting *Butner*, 440 U.S. at 55, 99 S.Ct. at 918). Thus, in determining if an assignment of rents is absolute and transfers title or, instead, creates a security interest, a court

must ensure the creditor "is afforded in [F]ederal bankruptcy court the same protection [it] would have under state law if no bankruptcy had ensued." ' *Jason Realty*, 59 F.3d at 427 (quoting *Butner*, 440 U.S. at 56, 99 S.Ct. at 915). New Jersey law accordingly governs.

■ In New Jersey, an assignment of rents transfers title to the assignee. *See Jason Realty*, 59 F.3d at 427 (citation omitted). "An assignment of a right is a manifestation of the assignor's right to performance by virtue of which the assignor's right to performance by the obligor is extinguished in whole or in part and the assignee acquires right to such performance." *Id.* (citation omitted). The "precise wording" of the assignment determines its effect. *See id.* (citations omitted); *MacArthur Executive Assocs. v. State Farm Life Ins.*, 190 B.R. 189, 195 (D.N.J.1995); *In re Donato*, 170 B.R. 247, 253 (Bankr.D.N.J.1994); *Matter of Glen Properties*, 168 B.R. 537, 541 (D.N.J.1993)

■ An absolute assignment passes title to the assignee upon its execution. *See Jason Realty*, 59 F.3d at 427 (citation omitted). An assignment is considered absolute if its language demonstrates "an intent to transfer immediately the assignor's rights and title to the rents." *Id.* As in *Jason Realty*, the instant assignment is "quintessentially absolute," because it was a complete "assignment in per verba de praesenti." *See id.* Paragraph 32 is written in the present tense and demonstrates the parties mutually agreed to transfer title to the rents. The AFC Assignment of Rents states: "As further security for the payment of the [i]ndebtedness and performance of the [o]bligations, the Mortgagor hereby absolutely and unconditionally assigns to the Mortgagee, effective irrespective of any [e]vent of [d]efault hereunder, the rents. . . ." Mortgage Document attached as Exh. J to Carretta Aff., Paragraph 32. This language unambiguously and inescapably expressed an agreement between the parties to assign present title.

The Mortgage Document the parties signed is called "Open–End Mortgage, *Absolute Assignment of Leases and Rents* and Security Agreement." *See* Mortgage Document attached as Exh. J to Carretta Aff.

(emphasis added). Although not dispositive of the instant issue, the title of the executed Mortgage Document indicates both parties were least aware of the potential effect of executing the Mortgage Document, specifically Paragraph 32. The specific title of the Mortgage Document indicates it contained not only a mortgage but an absolute assignment and a security agreement as well.

Moreover, the "precise wording" of Paragraph 32 states:

> As further security for the payment of the [i]ndebtedness and performance of the [o]bligations, the Mortgagor hereby *absolutely and unconditionally assigns* to the Mortgagee, effective irrespective of any [e]vent of [d]efault hereunder, *the rents* . . . .

*Id.* (emphasis added). The specific language of Paragraph 32 in combination with the title of the Mortgage Document unambiguously indicates the present intention of both parties to enter into an absolute assignment. Although beginning with "[a]s further security" this language does not make Paragraph 32 ambiguous. A separate security interest in the rents was provided for in Paragraph 21(c). Moreover, the Mortgage Document states: "the rights and remedies of Mortgagee shall be cumulative and not exclusive one of the other . . . ." Mortgage Document attached as Exh. F to Carretta Aff., Paragraph 14. This calls for a reading of the Mortgage Document which unambiguously provides for both a security interest in the rents and an absolute assignment of them.

It is not internally inconsistent for the Mortgage Document to provide for both a security agreement and an absolute assignment of rents. *See Jason Realty,* 59 F.3d at 428; *MacArthur,* 190 B.R. at 195. The Third Circuit has held that a mortgage may contain two independent remedies for the creditor. *See Jason Realty,* 59 F.3d at 428 ("An assignment clause within a mortgage may be independent of the mortgage security.") (citations omitted); *MacArthur,* 190 B.R. at 195. If a creditor could not provide for both remedies, the creditor would be forced to elect between the two notwithstanding the effort to provide for both remedies in case one fails or is later deemed defective. *See MacArthur,* 190 B.R. at 195.

The *Jason Realty* court also noted an assignment of rents clause can be part of a financing transaction and even if contained within a mortgage may be independent of the mortgage security. *See Jason Realty,* 59 F.3d at 428 (citations omitted). Although a stronger argument is made when the absolute assignment is contained in a separate document, the execution of two separate documents is not necessary to the finding that a valid absolute assignment of rents was executed. *See id.* at 428.

*Donato* is instructive in the instant matter. In *Donato* the assignment at issues stated:

> [I]n order to induce the [a]ssignee to made the [l]oan to the [a]ssignor and (a) to secure the payment of the "[i]ndebtedness" . . . and (b) to secure the performance by the [a]ssignor of all other obligations and covenants of the [l]oan [d]ocuments, the [a]ssignor, for good and valuable consideration, the receipt of which is hereby acknowledged, does hereby bargain, sell, transfer, assign, convey, set over and deliver unto [a]ssignee all right, title and interest of the [a]ssignor in, to and under any and all leases . . . and all rents . . . .

*Id.* at 254. . The second paragraph of the Donato assignment stated "[t]his [a]ssignment is absolute and effective immediately." *Id.*

The court noted the first two sentences quoted above indicated the assignment was not absolute but, rather, served as security for the loan to the debtor. *See Donato,* 170 B.R. at 254. The court considered the document ambiguous and construed the document against the party who drafted the document, the creditor. *See id.* (citation omitted). The court held the assignment only created a security interest in the rents and the debtor, therefore, retained an interest in the rents. *See id.*

The instant matter is easily distinguished from *Donato.* Here, the parties, as evidenced by the Mortgage Document, specifically created both a security agreement and an assignment of rents. There is no ambiguity in the Mortgage Document. Separate

paragraphs specifically create each of these different protections for AFC. Moreover, Paragraph 12 indicates the rights and remedies of AFC were cumulative which further supports the creation of both a security interest and an absolute assignment.

In support of his argument that the AFC Assignment of Rents was not absolute, Carretta relies heavily upon the provision in Paragraph 32(c) which permits him to assign, after obtaining the written consent of CoreStates, the rents or any part thereof from the Paramus Property. *See* Opposition Brief at 22. Carretta argues Paragraph 32(c) implicitly recognized he could assign the rents again notwithstanding the assignment to AFC if consent was obtained. *See id.* Carretta's acknowledgment of his ability to assign the rents from the Paramus Property is correct, however, this does not support his argument that only a pledge of the rents was created.

The assignment at issue in *Jason Realty* also provided the debtor with a license to collect the rents. *See Jason Realty,* 59 F.3d at 428. In its analysis, the *Jason Realty* court considered the assignment clause in *Matter of Glen Properties,* 168 B.R. 537 (D.N.J.1993) and found the two to be similar. *See id.* The *Jason Realty* court concluded the license held by the debtor in the rents did not affect the other language evidencing an absolute assignment. *See id.* at 429.

There is no meaningful difference between the clauses at issue in *Glen Properties* and *Jason Realty* and the instant case. Carretta's ability to assign the rents to another during the period before default does not evidence he retained any ownership interest in the rents. It merely indicates during the time he had a license in the rents, if AFC consented, he had the ability to assign these payments for a period which would end upon his default of the underlying loan obligation.[9]

Carretta's terminable license interest in the rents and his ability to reassign this interest for a certain period do not defeat the absolute nature of the assignment provided for in Paragraph 32. This capability does not convert Carretta's license into an ownership interest.

The AFC Assignment of Rents unambiguously creates an absolute assignment. The precise language of Paragraph 32 indicates the then present intent of the parties at the time of execution was to create an absolute assignment. Notwithstanding the precise language of Paragraph 32 in combination with the creation of a separate security interest in the rents from the Paramus Property, Carretta contends the AFC Assignment of Rents was rendered ambiguous by extrinsic evidence, making it distinguishable from the assignment of rents in *Jason Realty.* *See* Opposition Brief at 19–20. When extrinsic evidence is considered Carretta argues the overall effect and purpose of the AFC Assignment of Rents was only to create a pledge for security. *See id.* at 26. Carretta relies upon a number of cases interpreting contractual language in support of this argument.

Carretta first relies upon *Senior Executive Benefit Plan Participants v. New Valley Corp.,* 89 F.3d 143 (3d Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 947, 136 L.Ed.2d 835 (1997), where the Circuit reversed rulings by the bankruptcy and district courts which had denied the plaintiffs an opportunity to present· extrinsic evidence concerning the intent of the parties in interpreting the language of deferred compensation plans. *See id.* at 146. *New Valley* involved the interpretation of a "top hat plan," a unique type of ERISA plan which "can be partially or exclusively oral." *See id.* at 148, 149. In interpreting the contract at issue, the *New Valley* court applied the Federal common law of contract. *See id.* at 149.

9. During the 24 June 1997 Hearing and in the Carretta Bankruptcy Court Brief, Carretta relied upon *In re Koula Enterprises, Ltd.,* 197 B.R. 753 (Bankr.E.D.N.Y.1996) for support. The Bankruptcy Judge indicated the language of the assignment at issue in *Koula* was different than the language of the AFC Assignment of Rents. *See* 24 June 1997 Hearing at 43. The assignment in *Koula* stated as long as the debtor was not in default it could collect the assigned rents and assign the rents with the prior written consent of the creditor. *See Koula,* 197 B.R. at 756. Moreover, the language of the assignment in *Koula* stated "[t]he balance of such rents . . . [after the payment of certain expenses] shall be the MORTGAGOR's absolute property." *Id.* The Bankruptcy Judge correctly concluded the *Koula* case was not controlling.

As indicated, the instant case is governed by New Jersey law. This difference is not significant considering a Federal court may apply general rules of state contract law as long as Federal law does not provide a conflicting rule. *See Sheet Metal Workers, Local 19 v. 2300 Group, Inc.,* 949 F.2d 1274, 1284 (3d Cir.1991); *Teamsters Indus. Emp. Welfare Fund v. Rolls–Royce Motor Cars, Inc.,* 989 F.2d 132, 135 (3d Cir.1993) (citing *Sheet Metal Workers Local 19 v. Keystone Heating & Air Conditioning,* 934 F.2d 35, 40 (3d Cir. 1991)).

The *New Valley* court explained that when deciding whether a contact is ambiguous a court does

> not simply determine whether, from [its] point of view, the language is clear. Rather, [a court] "hear[s] the proffer of the parties and determine[s] if there [are] objective indicia that, from the linguistic reference point of the parties, the terms of the contract are susceptible of different meanings." *2300 Group, Inc.,* 949 F.2d at 1284 (quoting *Mellon Bank N.A. v. Aetna Business Credit, Inc.,* 619 F.2d 1001, 1011 (3d Cir.1980)). Before making a finding concerning the existence or absence of ambiguity, [a court] consider[s] the contract language, the meanings suggested by counsel, and the extrinsic evidence offered in support of each suggested interpretation. *Id.; International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW v. Mack Trucks,* 917 F.2d 107, 111 (3d Cir. 1990), *cert. denied,* 499 U.S. 921, 111 S.Ct. 1313, 113 L.Ed.2d 246 (1991) [ (citation form substituted when necessary) ].

*New Valley,* 89 F.3d at 150; *see American Cyanamid Co. v. Fermenta Animal Health Co.,* 54 F.3d 177, 181 (3d Cir.1995) (quoting *Teamsters,* 989 F.2d at 135).

The Third Circuit criticized the bankruptcy court and the district court for not following this approach. *See New Valley,* 89 F.3d at 150. The *New Valley* court noted:

> Both instead adopted, and then misapplied, a "four corners" approach to the contract. [*See* ] *Mellon Bank,* 619 F.2d at 1011 ("Under a 'four corners' approach a judge sits in chambers and determines from his [or her] point of view whether the written words before him [or her] are ambiguous.") Since *Mellon Bank,* however, this court has required the judge to hear the proffer of the parties and consider extrinsic evidence to determine whether there is an ambiguity, and then to resolve or clarify any ambiguity that may exist.

*Id.*

When determining whether contractual provisions are clear and unambiguous, terms should be accorded their "plain and ordinary meaning." *Independent Oil Workers v. Mobil Oil Corp.,* 441 F.2d 651, 653 (3d Cir.1971); *Kaufman v. Provident Life and Cas. Ins. Co.,* 828 F.Supp. 275, 283 (D.N.J.1992), *aff'd,* 993 F.2d 877 (3d Cir.1993) (citation omitted); *Seidenberg v. Mutual Life Ins. Co.,* 949 F.Supp. 269, 276 (D.N.J.1996), *aff'd without opinion; Nester v. O'Donnell,* 301 N.J.Super. 198, 210, 693 A.2d 1214 (App. Div.1997) (citation omitted). Ambiguity exists if such terms are "susceptible to two reasonably alternative interpretations." *Nevets C.M., Inc. v. Nissho Iwai American Corp.,* 726 F.Supp. 525, 531 (D.N.J.1989), *aff'd,* 899 F.2d 1218 (3d Cir.1990); *see Pennbarr Corp. v. Insurance Co. of North America,* 976 F.2d 145, 151 (3d Cir.1992).

To preserve a level of predictability for the contracting parties, the inquiry into the correct interpretation of the AFC Assignment of Rents will focus on the objectively manifested intent, rather than the indiscernible subjective intent, of the parties. *See Teamsters,* 989 F.2d at 137; *Gulf Oil Corp. v. Commissioner of Internal Revenue,* 914 F.2d 396, 407 (3d Cir.1990).

In support of it interpretation of Paragraph 32, Carretta argues the conduct of the parties at the time the AFC Assignment of Rents was executed should be considered. *See* Opposition Brief at 19. Carretta asserts AFC knew about the three other assignment of rents provisions signed in favor of either AFC or CoreStates simultaneously with the AFC Assignment of Rents. *See id.* at 20–21. Carretta also argues the Carretta Affidavit concerning his understanding of his intent behind the execution of the AFC Assignment of Rents evidences that only a pledge of the

rents from the Paramus Property was intended. *See id.* at 26.

■ ■ Extrinsic evidence cannot be considered to modify, enlarge, or curtail the terms of the AFC Assignment of Rents, but, rather, to aid in determining the meaning of what the parties memorialized in writing. *See American Cyanamid,* 54 F.3d at 181. Assuming arguendo evidence of extrinsic circumstances is admissible to aid in the interpretation of the AFC Assignment of Rents, which through its precise wording creates an absolute assignment, this evidence cannot be used to support an intention not expressed in the Mortgage Document. *See American Cyanamid,* 54 F.3d at 181.

> Evidence of the circumstances is always admissible in aid of the interpretation of an integrated agreement. This is so even when the contract on its face is free from ambiguity. The polestar of construction is the intention of the parties to the contract as revealed by the language used, taken as an entirety; and, in the quest for the intention, the situation of the parties, the attendant circumstances, and the objects they were thereby striving to attain are necessarily to be regarded. The admission of evidence of extrinsic facts is not for the purpose of changing the writing, but to secure light by which to measure its actual significance. Such evidence is adducible only for the purpose of interpreting the writing—not for the purpose of modifying or enlarging or curtailing its terms, but to aid in determining the meaning of what has been said. *So far as the evidence tends to show, not the meaning of the writing, but an intention wholly unexpressed in the writing, it is irrelevant.* The judicial interpretive function is to consider what was written in the context of the circumstances under which it was written, and accord to the language a rational meaning in keeping with the expressed general purpose.

*Id.* (quoting *Atlantic Northern Airlines v. Schwimmer,* 12 N.J. 293, 301–02, 96 A.2d 652 (1953)) (emphasis added).

■ As indicated, extrinsic evidence can be used to explain but not to contradict the plain words of a document. In the instant matter, the extrinsic evidence offered by Carretta and considered by the Bankruptcy Court directly contradicts the precise words of Paragraph 32 evidencing the present intent of the parties to enter into an absolute assignment. Carretta cannot introduce these additional transactions to establish his intent which is unambiguously expressed in the AFC Assignment of Rents and is further supported by Paragraph 21 which creates a separate security interest in the rents from the Paramus Property. *See American Cyanamid,* 54 F.3d at 181. Additionally, the Carretta Affidavit offered to establish the intent of the parties also directly contradicts the precise language of Paragraph 32 which unambiguously creates an absolute assignment.

■ The simultaneous execution of three other documents with assignment of rents clauses along with the AFC Assignment of Rents is not necessarily indicative of an intention to only create a pledge of rents. The First AFC Mortgage provides that when all sums secured thereby are paid to AFC then the First AFC Mortgage shall cease and become void. *See* Mortgage Document attached as Exh. J. to Carretta Aff., ¶ 30. Accordingly, because two separate mortgages were issued on behalf of AFC it was necessary for AFC to include an assignment of rents provision in each mortgage if it desired this additional protection. The inclusion of such a provision in each mortgage is not indicative of the creation of only a pledge of rents in the First AFC Mortgage when the precise wording of Paragraph 32 indicates an absolute assignment was intended.

Understandably, the determination that the AFC Assignment of Rents is absolute frustrates the reorganization process of Carretta. As *Butner* pointed out, however, a debtor in bankruptcy should fair no better inside of bankruptcy than outside of bankruptcy. 440 U.S. at 56, 99 S.Ct. at 918–19. This rationale similarly applies to a creditor such as AFC.

The precise wording of Paragraph 32 creates an absolute assignment of rents in the Paramus Property. This conclusion is further supported by the separate creation of a

security interest in the rents and Paragraph 14 indicating that the rights of AFC are cumulative. Even assuming arguendo, it was appropriate to ignore the precise wording of the AFC Assignment of Rents and look to extrinsic evidence, such evidence does not change the instant determination. The execution of three other documents with assignment of rents clause as to rents from the Paramus Property cannot be used to contradict the expressed intent of the parties. This evidence does exactly that. Moreover, this extrinsic evidence is not necessarily inconsistent with the creation of an absolute assignment of rents in favor of AFC.[10] The judgment of the Bankruptcy Court is therefore reversed.

*Conclusion*

For the reasons set forth above, the 25 July 1997 Order of the Bankruptcy Court is reversed.

---

**10.** Although not an issue before this court, it appears an assignment of rents was also executed in favor of CoreStates. Issues regarding the existence of such an assignment of rents and the order of priority as to the assignment of rents provisions executed in favor of each CoreStates and AFC are not properly before this court at this time and are for the Bankruptcy Court to decide. During the 24 June 1997 Hearing, the Bankruptcy Court noted issues regarding priorities were not going to be resolved that day. *See* 24 June 1997 Hearing at 27. Accordingly, because additional issues still must be resolved by the Bankruptcy Court regarding priorities as to the rents from the Paramus Property, it is inappropriate to address AFC's request for relief from the automatic stay at this time.